Syllabus.

# C. KISABA AND THE BALDWIN NATIONAL BANK OF KAHULUI *v.* MANUEL BORGE, IDA LOU HARRIS-COLLINS AND PAUWELA PINEAPPLE COMPANY.

## No. 1324.

### APPEAL FROM CIRCUIT JUDGE FIRST CIRCUIT. HON. J. J. BANKS, JUDGE.

ARGUED FEBRUARY 1, 1922.      DECIDED FEBRUARY 20, 1922.

### COKE, C. J., KEMP AND EDINGS, JJ.

CONTRACTS—*planting agreement—covenants.*

> A breach by the tenant or occupier of the covenants or stipulations on his part to be kept and performed, contained in the contract, does not work a forfeiture of the term in the absence of an express proviso to that effect.

SAME—*same—same.*

> A party endeavoring to enforce a forfeiture must comply strictly with the tenor of the contract that he is acting under.

SAME—*same—same—construction.*

> The general rule is that the character of a contract to cultivate lands on shares is to be determined by ascertaining the intention of the parties as expressed in the language they have used.

SAME—*same—same—abandonment.*

> The landlord cannot evict the tenant or occupier and afterwards claim an abandonment by him.

### OPINION OF THE COURT BY EDINGS, J.

The essential facts of this controversy may be summarized as follows: The respondent Mrs. Collins was the owner of certain land on the Island of Maui in this Territory, more specifically described herein, and upon the 6th day of November, 1917, entered into a certain planting contract with one K. Kajiwara, the said contract being as follows:

"This agreement made this 6th day of November, A. D. 1917, by and between Mrs. Ida Lou Harris-Collins, of Kuiaha, Hamakualoa, County of Maui, Territory of Hawaii, hereinafter called the Landlady, which expression shall include her heirs, executors, administrators and assigns, where the context so requires or admits of the first part; and K. Kajiwara, of Kuiaha, Hamakualoa, County of Maui, aforesaid, hereinafter called the Tenant, which expression shall include the heirs, executors, administrators and assigns, where the context so requires or admits of the second part; Witnesseth:

"That the Landlady for and in consideration of the promises, agreements and covenants herein contained on the part of the Tenant, to be performed and observed, does hereby empower and authorize the Tenant to enter immediately into and upon, and use and occupy all the uncultivated portion of Homestead Lot No. 32 on both sides of the gulch, situated at Kuiaha, Hamakualoa, County of Maui, aforesaid, for the cultivation of pineapples.

"And the Tenant hereby agrees with the Landlady that he will, in a proper, skillful and husbandman-like manner, clear, plow, harrow, thoroughly prepare and plant with pineapple plants all of said land as aforesaid, weed, cultivate, harvest, haul and deliver all pineapples so harvested to a pineapple cannery, there to be sold by the ton at the then current market price and credited to the Landlady.

"And the said Tenant further agrees to plant all of said land during the year 1918.

"And in consideration of the performance of the above agreement and covenants by the Tenant, the Landlady hereby agrees to pay over to the Tenant of the proceeds derived from the sale of all pineapples, aforesaid, Eighty per cent. (80%), and the cannery or purchaser of all such pineapples shall, and is hereby authorized to pay over to the said Tenant his share of Eighty per cent. (80%) of all the proceeds of such sales as above specified and to charge the same to the account of said Landlady.

"It is mutually agreed and understood by and be-

tween both parties hereto that this agreement shall continue in full force and effect until three crops of pineapples shall have been harvested and delivered as aforesaid, from all of the said premises, in other words, this contract shall terminate after the harvesting of the second ratoon.

"It is also mutually agreed and understood by and between both parties hereto that all shoots, slips and tops not needed by the Tenant for the cultivation of said premises, may be sold, if possible, and the proceeds divided between the Landlady and Tenant as aforesaid."

During the year 1918 the said Kajiwara planted six acres of the land described in said contract in pineapples. On October 28, 1918, Kajiwara duly assigned all of his right, title and interest in and to said contract to one Mizubayashi and on the 3d day of October, 1919, the said Mizubayashi duly assigned the same to one C. Kisaba, one of the petitioners herein. On the said date, to wit, October 3, 1919, Kisaba, as security for the sum of $2425 loaned him by the petitioner the Baldwin National Bank of Kahului, executed to said bank a mortgage, including among other crops of pineapples all of the pineapples belonging to him under the above contract and the assignment thereof to himself, and at the same time executed an order to the Haiku Fruit & Packing Company authorizing them to pay over to the Baldwin National Bank the proceeds of his interest in the pineapples grown on said premises to be applied on said debt.

The petitioners filed their bill in equity and among other things therein allege that the said C. Kisaba entered upon the said lands and thereon planted and cultivated pineapples in accordance with the terms and conditions of said planting contract and has continued to cultivate and plant said land until on or about the 1st day of March, 1920, when the respondent Manuel Borge "drove the petitioner C. Kisaba and his agent and em-

ployees" from the said premises and refused to allow
them to come upon said land or to plant or cultivate or
to remove pineapples from said land and has appropri-
ated to his own use the crops of pineapples planted and
cultivated by him, the said Kisaba, and his predecessors
in interest under said contract; that petitioners are in-
formed and believe and so allege that the said Manuel
Borge claims to be entitled to the possession of said land
under some contract or agreement with Mrs. Collins;
that the said Manuel Borge is harvesting said pineapples
and has delivered and is delivering them to the Pauwela
Pineapple Company, a respondent herein, and pray that
the rights of the parties may be adjudicated and deter-
mined and the Pauwela Pineapple Company be enjoined
from paying to said Borge or Mrs. Collins any moneys
due as the purchase price of said pineapples.

At the conclusion of the hearing the trial judge found
among other things that six acres of the land described
in the contract were planted in pineapples; that there
was other land included in the contract which was avail-
able for pineapples which was not planted; "that the
contract was duly assigned to one C. Kisaba, one of the
complainants in this action." "Kisaba, after his interest
attached in October 1919 cultivated and cared for the
said six acres up to December 1919." In the early part of
December Kisaba left the premises and moved to a place
some twenty miles distant, leaving one Nakasoni in
charge. For a short time in December Nakasoni did some
work on the six acres but not sufficient to prevent the
growth of weeds and grass thereon. The pineapple plants
on the said six acres were so neglected that the entire crop
was in danger of being destroyed and utterly lost. "On
the 12th of February, 1920, the crop of pineapples on
the six acre tract was so over-grown with weeds and
grass that it was necessary for Mrs. Collins to take some

steps to rescue it or entirely lose her interest therein." "On that date she sold all her right and interest in said crop of pineapples to the respondent Manuel Borge." "When Kisaba left the premises in December 1919, and took up his residence and engaged in other business at a place 20 miles distant and thereafter so neglected the crop of pineapple plants growing on the six acre tract that it was overrun with weeds and grass, he was guilty of an abandonment of the premises and thereby forfeited to Mrs. Collins all his rights under his contract with her." "When she (Mrs. Collins) discovered that her interest was about to be lost through the abandonment and neglect of her tenant she had a perfect right to repossess herself of the premises and take whatever steps were necessary for her protection." "The bank's interest in the crop growing on the 6 acres can be no greater than Kisaba's and since Kisaba lost his interest by abandoning the crop the bank likewise lost its interest." It follows "that Manuel Borge by virtue of his contract with Mrs. Collins was at the time the suit was brought rightfully in possession of the 6 acre tract and the pineapples growing thereon." From these findings and the decree based thereon the petitioners duly perfected an appeal to this court.

The contract in question has been referred to as a "lease," a "planting contract," a "cropping contract" and an "agreement to plant shares." We regard the instrument as simply a written contract which speaks for itself, wherein was set forth the rights, duties and obligations of the contracting parties, and the cognomen bestowed upon it cannot change or alter the rules of construction applicable to contracts of this nature.

It appears from the record that the decision and the decree based thereupon were predicated upon the neglect and abandonment by Kisaba of the premises in question,

the court finding "that when Kisaba left the premises in December 1919, * * * and thereafter so neglected the crop of pineapples that it was overrun with weeds and grass he was guilty of abandonment of the premises and thereby forfeited to Mrs. Collins his contract with her." The contract or agreement in question does not contain any words which confer, or might be construed into conferring, upon the owner, Mrs. Collins, the right or authority to declare a forfeiture for a breach of any of the covenants contained in said contract or which might be interpreted as giving her the right of arbitrarily terminating the contract and entering upon and repossessing herself of the premises. The contract itself is signally silent upon this subject.

It is the general rule, and the rule which has been approved and adopted by this court, that the breach by the lessee of the covenants or stipulations on his part to be kept and performed, contained in the lease, does not work a forfeiture of the term in the absence of an express proviso to that effect in the lease. (16 R. C. L., Landlord & Tenant, 1115, 1116.) A lessor cannot reenter on the demised premises for nonpayment of rent unless the lease contains a proviso for forfeiture and reentry upon nonpayment. (*Wirt* v. *Philips*, 1 Haw. 61 (102).) Even where the lease or contract does contain a covenant permitting reentry in case of a breach the rule is that the party seeking to enforce the covenant must comply with its terms and conditions. "A party endeavoring to enforce a forfeiture must comply strictly with the tenor of the contract that he is acting under." (*Mini* v. *Hilo Sugar Co.*, 15 Haw. 480, 484.) The mere breach of the contract does not of itself work a forfeiture.

It is therefore manifest that neither the neglect of the party of the second part to said contract, therein

designated as the "tenant," nor the breach by him of any of the covenants contained in said contract would authorize or justify Mrs. Collins in summarily and arbitrarily, without process of law, terminating or annulling said contract and repossessing herself of the premises and confiscating the crop of pineapples growing thereon. There may be cases of this nature, that is, planting contracts, in which neglect of the crop was so pronounced, flagrant and outrageous as to amount to a technical or presumptive abandonment, but this theory is repudiated by a preponderance of the testimony and negatived by the fact that the crop on this land never at any stage, from the time of its being planted to the time of the reaping thereof, suffered such neglect as to bring the yield thereof below the average yield per acre of pineapple crops in that district. Hence our inquiry will be directed to the right of the owner or "landlady" to declare a forfeiture solely upon the ground of abandonment and whether or not a legal abandonment ever existed at the time claimed.

It should be borne in mind that the entire property of Mrs. Collins, known as Homestead Lot. No. 32, consists of the lands described in this contract, namely, "all of the uncultivated portion of Homestead Lot. No. 32 on both sides of the gulch," and in addition thereto seventeen acres not included in this contract; that the "entire land is surrounded by a complete enclosure. The seventeen acres are not separated from the six acres by any fence;" that the seventeen acres were, under a contract between the same parties dated September 14, 1915, at all times from that date up to the time of the trial of this cause in the undisputed possession of the same parties who are asserted to have abandoned the six acres, and that their right to the possession of the seventeen acres has never been questioned as far as the record shows.

There was a great deal of testimony introduced at the suit which must be regarded as irrelevant. The remaining or relevant evidence is substantially as follows: The pineapples were in good condition in December 1919. This evidence is regarded as conclusive by the trial court and a finding to that effect incorporated in the decision. The petitioner Kisaba left the land, both the six acre and the seventeen acre tracts, in December 1919, removing to Keanae, some twenty miles distant in the same county. Kisaba testified that "outside of those seventeen and six acres I cultivated about four acres, probably a little bit more, dug out the guava trees, took away the stones and plowed the place." "I did not plant these four (4) acres to pines." "This lady (Mrs. Collins) told me that the contract expired." "I dug out the trees from May to June, from July to September I plowed the place." "It was sometime in October or early part of November that Mrs. Collins stopped me." "After I left for Keanae I left two men (Shimakoku and Nakasuna) who had been working with me in my house on this land of Mrs. Collins to take care of the place, and I gave them special instructions to pay more particular attention on the six acres of land, and afterward Shimakoku took care of the seventeen acres and Nakasuna took care of the six acres. Shimakoku is working on the seventeen acres at the present time." "After I left Nakasuna done the hoeing (on the six acres) from the time I left up to sometime in January, and after that he had some dispute with Mrs. Collins and he left the place." "I don't mean Mrs. Collins, I mean he had some dispute with the Portuguese lady." "Mrs. Borge. Nakasuna came and told me about it." "The Portuguese man (respondent Borge) would not permit me to put any one on the field." "I went to Borge and told him to return that pineapple field to me, and he told me that the contract was broken and I had

nothing to do with it. So I came back and went to Yoshimatsu's place." "This was during April or May that I talked to Borge." "1920." Nakasuna testifies on behalf of petitioner that in December 1919, he was living in a house on Mrs. Collins' land and was working for Kisaba—"worked steadily on the six acre piece for nine days. Still live with Shimabuku in house on the seventeen acres." "When Kisaba left in December he gave me $20 and told me to take care of the land in December, which I did. In the early part of February I saw Borge working on the six acres, and went and reported to Kisaba." Mrs. Collins, one of the respondents, and the owner of the land herein referred to, testifies that she "was on the property from August 18, 1919, to July 11-12, 1920, that up to February 12 saw no one working the six acres." "No one on the six acres when I made the agreement with Borge." "I left there in 1917 and remained away until August 1919. Have no knowledge of the situation between those times 1917 and 1919." "I have servants' quarters where the seventeen acres is and they (Japanese) were occupying it." "Shimabuku was living on the place when I got back in August. Don't know whether anybody else lived in the house with him or not." "I saw a man helping him hoeing." "They— I think these men worked on other fields and if he (Shimabuku) needed them there they helped him. That was my understanding. Of course they can't talk English and I can't understand what they say and I don't know." "The man on the 17 acres was grubbing and cleaning and plowing all the time" (in 1919). "I saw plowing of previously uncultivated lands on the west side of the gulch (part of the lands embraced in the contract in question) toward the last, very last of the year 1919." "The plowing was on the west side of the gulch, on land adjoining these six acres." "I could not say who was doing the plowing."

"I told him that he had no contract." "Q And you drove him off the place?" "A Certainly did." "He was not through with his plowing." "Don't know if the man doing the plowing was under Kisaba or not. I couldn't tell you who he was working for." "He told me he had bought the control and I told him that there was no contract." "There was no contract in effect because it had been broken." "I told him the contract had been broken in 1918." "I told him the contract was broken because all of my land was to be planted in 1918. The man had failed to plant it in 1918." "And through the fields not being cultivated my fields were abandoned, my land was abandoned. I didn't feel that the Japanese had a right to go on and keep planting every year a little bit, you see." "I did not see this Japanese again." "I did not do anything towards cultivating the fields in any way until February when I made the conveyance to Mr. Borge." "I did not make any effort to plant it."

From the evidence we are unable to discover any abandonment of the land described in the contract or of the crops growing thereupon. Whether or not there was only part performance on the part of the tenant or whether the growing crop had at times been neglected are questions beside the issue. The most positive and weighty evidence which the record discloses is the testimony of Mrs. Collins herself which clearly establishes an illegal eviction of the tenant and not an abandonment by him. She among other things stated to the man thus engaged in cultivating some portion of the land, that there was no contract in effect because it had been broken in 1918 by Kajiwara's failure to plant all of the land, and drove him off, thus forcing an abandonment upon him. And of course where a party has attempted to terminate a contract on a stated ground such action cannot afterwards be justified on the ground that some other

sufficient reason therefor existed at the time. (13 C. J. 607.)

There was in this instrument no right of reentry reserved upon failure to perform the covenants or conditions of the agreement nor any stipulation therein that a failure to perform should not operate as a forfeiture or termination of the contract, nor does the evidence disclose any ground for presuming that the contract had been abandoned.

The respondents contend that the contract in question was a "cropping contract" and that the occupier had no interest in the growing crop. What are sometimes denominated "cropping contracts" are usually for one year or for a single crop. Contracts of this nature are entirely different from the instrument under consideration. In the case of *Gray* v. *Robinson,* 33 Pac. 712, 713, cited by respondents in support of this contention, the court says: "The general rule, as laid down by the weight of authority, is that the character of a contract to cultivate lands on shares is to be determined by ascertaining the intention of the parties as expressed in the language they have used,"—which we regard as exceedingly sound, but we have been unable to discover any rule of construction by which an eviction of the tenant or occupier could be converted into an abandonment by him.

The respondents further contend that the petitioners are not proper parties to the suit and that the mortgage in question is not binding upon the respondents. In view of our opinion in the case we do not discover any merit in this contention.

The decree appealed from is reversed and the cause is remanded to the court below for further proceedings consistent herewith.

*E. C. Peters* and *H. R. Hewitt* (*Peters & Smith* and *E. R. Bevins* on the brief) for petitioners.

*W. B. Pittman* (*Andrews & Pittman* and *E. Murphy* on the brief) for respondents.