## JOHN VENHUIZEN *v.* HAIKU FRUIT & PACKING COMPANY, LIMITED.

### No. 1682.

ERROR TO CIRCUIT COURT SECOND CIRCUIT.
HON. R. J. O'BRIEN, JUDGE.

ARGUED MARCH 22, 1927.                    DECIDED APRIL 25, 1927.

PERRY, C. J., BANKS AND PARSONS, JJ.

CONTRACT FOR CULTIVATION OF LAND—*title to crop—action for proceeds.*

Under a contract between A and B which provides *inter alia* (a) that B shall cultivate and harvest crops on the land of A, (b) that said crops shall then be delivered and sold to C, (c) that the proceeds of said sale shall be credited to A, (d) that from said proceeds A shall pay B seventy-five per cent as his share thereof, (e) that C is authorized by A to pay to B the latter's share of said proceeds and to charge the amount thus paid to A's account, (f) that in case of neglect of the crops by B, A may care for the same and charge the expense of so doing to B to be deducted from B's share at the time of settlement with C; title to crops so cultivated by B and his assigns and harvested, sold and delivered to C remains in A until transferred to C by said sale, and the value of said crops is recoverable in an action of assumpsit by A against C.

ASSUMPSIT—*defense of authorization of payment to third person and payment thereunder.*

Neither authorization from A to C, under circumstances set forth in the last preceding paragraph, to pay B a part of the proceeds of the crop so sold to C, which has been expressly revoked by A before C has acted upon the same to his prejudice, nor payments nor credits to B or his assigns upon said authorization made after said revocation are a defense to A's action against C for the value of the crop so sold and delivered.

OPINION OF THE COURT BY PARSONS, J.

This is an action in assumpsit for goods sold and delivered, tried jury waived in the circuit court of the second circuit, in which judgment was rendered for the

plaintiff in conformity with the prayer of his amended complaint in the sum of $2962.93 principal, with interest, costs and attorney's commissions. Defendant's answer was a general denial and an averment of former adjudication. After submission of the case the substitute judge who presided at the trial filed a written decision which contains, *inter alia,* the following finding of facts:

"The plaintiff is the owner of certain real estate at Kuiaha, Maui, known as Homestead Lot No. 55; on the end day of December, 1918, plaintiff entered into an agreement with one K. Matsuoka which provided as follows:

" 'This agreement made this 2nd day of December, A. D. 1918, by and between J. Venhuizen, of Kuiaha, County of Maui, Territory of Hawaii, hereinafter called the landlord, which expression shall include his heirs, executors, administrators and assigns, where the context so requires or admits of the one part; and K. Matsuoka, of Kuiaha, County of Maui aforesaid, hereinafter called the tenant, which expression shall include his heirs, executors, administrators and assigns, where the context so requires or admits of the other part: Witnesseth:

" 'That the landlord, for and in consideration of the premises, agreements and covenants herein contained on the part of the tenant, to be performed and observed, does hereby empower and authorize the tenant to enter immediately in and upon, and use and occupy seventeen acres, more or less, of Homestead Lot # 55 situated at Kuiaha, Hamakualoa, County of Maui, aforesaid, being the eastern portion of said lot, not including gulches.

" 'And the tenant hereby agrees with the landlord that *he will, in a proper, skillful and husbandmanlike manner* clear, plow, harrow, thoroughly prepare and plant with pineapple plants, *selected from healthy* plants, the aforesaid premises, weed, cultivate, harvest, haul and deliver all pineapples so harvested to the Haiku Fruit and Packing Company, there to be sold by the ton at the then current market price and credited to the landlord.

" 'And the said tenant further agrees to have the whole of the said premises under cultivation not later than

October 31, 1919; to build all fences on said premises, and also to keep and maintain in good repair all fences on said premises, and to pay all taxes and assessments that may be levied and assessed on the growing crops that may be grown on said premises during the life of this agreement.

" 'And in consideration of the performance of the above agreements and covenants by the tenant, the landlord herein agrees to pay over to the tenant of the proceeds derived from the sale of all pineapples aforesaid seventy-five percent (75%), and the company or purchaser of all such pineapples shall, and is hereby authorized to pay over to the said tenant his share of seventy-five percent (75%) of all the proceeds of such sales, as above specified, and to charge the same to the account of the said landlord.

" 'It is mutually agreed and understood by and between both parties hereto that this agreement shall continue in full force and effect until three crops of pineapples shall have been harvested and delivered as aforesaid, from all of the said premises, in other words, this contract shall terminate after the harvesting of the second ratoon.

" 'And it is further agreed and understood by and between both parties hereto that in case the said tenant shall neglect or refuse to keep said crops properly weeded and under good and proper cultivation, the said landlord may at any time hire or employ labor and incur all necessary expenses for the proper maintenance and cultivation of said crops and charge the same to the said tenant, to be deducted from his share at the time of settlement with said cannery.

" 'And it is also further and mutually agreed and understood between the parties hereto that all pineapple plants raised on said premises during the said term shall be divided in the following manner; 50% to the tenant 50% to the landlord.

" 'It is also further mutually agreed and understood between the parties hereto that at the end of the said term or immediately after harvesting the last crop, the tenant will cut down all large weeds, so that the land

may be plowed or utilized by the landlord for agricultural purposes. * * *'

"During the fall of 1920, one U. Tamashiro claiming to be the assignee of the above contract and with the knowledge of the plaintiff entered the land aforesaid and did some work cultivating pineapples growing thereon. Before July, 1921, Tamashiro abandoned the premises, thereupon the plaintiff harvested the pineapples from said lands and delivered them to the defendant Haiku Fruit and Packing Company, during the months of July and August, 1921. The first of said deliveries having been made on July first.

"On the 15th day of July, 1921, U. Tamashiro assigned his rights and interest in said contract to one S. Yoshimasu and the said Yoshimasu went to the plaintiff's land and notified plaintiff that he had taken an assignment from U. Tamashiro. The plaintiff notified S. Yoshimasu that Tamashiro had abandoned the premises and that he, the plaintiff, had taken possession and was harvesting the crop. The plaintiff ordered S. Yoshimasu from the premises and refused to recognize any of his agents who attempted to enter the premises.

"On the 10th day of August, 1921, the plaintiff by his attorney gave the defendant the following notice: 'As attorney for Mr. Venhuizen, I request that you pay no funds to any person for fruit delivered from his property to your cannery. No person other than he is entitled to funds of any kind or nature. He is willing at any time to come to the cannery and go over all the facts and figures with you. We are informed that your bookkeeper claims to be entitled to some funds from his fruit, but this is not so. Trusting that you pay Mr. Venhuizen for the fruit which he delivered to you, and to no other person.'

"On August 12, 1921, the receipt of this notice was admitted in writing by the defendant. The receipt of plaintiff's notice of August 10, 1921, and the writing of the acknowledgment thereof were also testified to by Mr. Tavares, the manager of the defendant.

"On the 7th day of September, 1921, the defendant sent the following letter to the plaintiff:

" 'We beg leave to hand you herewith our check No. 2219 for $987.64, the same being your share of 25% on all the proceeds from pineapples delivered to our cannery for the months of July and August, 1921. The deliveries from your fields were as follows:— July, $2,367.40 and August, $1,583.09, making a total of $3,950.57. The enclosed check for $987.64 represents your share of 25% on $3,950.57.

" 'Pursuant to the agreement, entered into by and between you and K. Matsuoka on the 2nd day of December, A.D. 1918, by the terms of which agreement we, the purchasers of all the pineapples delivered from your fields, were authorized to pay over to the tenant 75% of the proceeds from the sale of pineapples, which for the months of July and August, 1921, amounted to the difference between $3,950.57 and $987.64 or $2,962.93, we have credited the amount of $2,962.93 to the account of Seije Gibo.

" 'In accordance with a written order placed in our hands by said Seije Gibo and accepted by us, we have paid the Baldwin Bank, Limited, the sum of $2,533.35, which sum represented a mortgage on growing crops for $2,500.00 and $33.35 interest to date.

" 'Trusting you will find the above accounting satisfactory, we are, etc. etc.' "

Without definitely classifying the contract between Venhuizen and Matsuoka the trial court held the same to be unassignable. Quoting further from the decision:

"In view of all the evidence the court finds that K. Matsuoka left the premises in question and that the plaintiff never recognized any person as assignee of Matsuoka.

"The contract specifically providing that in case the 'said tenant shall neglect or refuse to keep said crops properly weeded and under good and proper cultivation, the landlord may at any time hire or employ labor and waive all necessary expense *and charge the same to the said tenant, to be deducted from his share at the time of settlement with said cannery,*' the notice given by the plaintiff's attorney on the 10th day of August, 1921,

terminated the defendant's authority to pay Matsuoka or any other person for pineapples delivered to it from the plaintiff's premises. The defendant had no interest in the contract. It was not signed by it and neither party could compel it to accept a single pineapple. After notice, it was bound to hold the money for the plaintiff.

"The court finds that the allegations in the plaintiff's complaint are true and that the reasonable value of the pineapples delivered to the defendant from the plaintiff's land is in the sum of three thousand nine hundred fifty and 60/100 dollars ($3,950.60).

"The plaintiff having received the sum of nine hundred eighty-seven and 67/100 ($987.67), the court gives judgment for the plaintiff against the defendant for the sum of two thousand nine hundred sixty-two and 93/100 dollars ($2,962.93), together with interest, attorney's commissions and costs."

Defendant's assignment of errors is as follows:

"First: That the court erred in holding that the contract between John Venhuizen and K. Matsuoka was for personal services and non-assignable, when there is no prohibitory clause or provision against assignment embodied in said contract;

"Second: That the court erred in not considering the various mesne assignments under which one S. Yoshimasu became a tenant under the terms of said contract;

"Third: That the court erred in holding that there was an abandonment by K. Matsuoka, the original tenant, when the contract itself does not contain any provision authorizing the landlord to enforce a forfeiture in the event of an abandonment;

"Fourth: That the court erred in ignoring the tenant's rights to his share of the crops under said contract and under the law of emblements;

"Fifth: That the court erred in finding that there was an implied contract between the defendant and plaintiff and holding that plaintiff was entitled to all of the proceeds of the crops;

"Sixth: That the court erred in holding that the de-

fendant had no interest in the contract and crops grown thereunder when the contract specifically authorizes the defendant to hold the proceeds of the sale of all pineapples and to pay twenty-five per cent. (25%) thereof to the landlord and seventy-five per cent. (75%) to the tenant;

"Seventh: That the court erred in not considering the evidence adduced by the defendant showing that advances had been made by it and by the Baldwin Bank, Limited, on defendant's note, to K. Matsuoka and his several mesne assignees to enable them to cultivate and bring to maturity all the pineapple crops involved in this cause;

"Eighth: That the court erred in not considering the evidence adduced by the defendant showing that the amount of money sued for in this action represented the deductions made for the total amount due to defendant for advances made by it and the Baldwin Bank, Limited, to said K. Matsuoka and his various mesne assignees for the purposes of enabling said K. Matsuoka and his various mesne assignees to carry out the terms of the contract hereinbefore referred to.

"Ninth: That the court erred in allowing an amended complaint to be filed after both sides had submitted their case on the law and evidence."

No objection was made to the form of any assignment above set forth and the cause was argued on its merits.

Under the pleadings in this action, in order to make out a *prima facie* case it was necessary only for the plaintiff to show (omitting formal and undisputed matters) that during the months of July and August, 1921, the plaintiff sold and delivered to the defendant pineapples grown upon the land described in the complaint of the reasonable value of $3950.60, payable to plaintiff August 31, 1921, and that of said amount only $987.67 has been paid.

As set forth above the trial judge found, and there was sufficient evidence to support his finding, that the plaintiff harvested the pineapples from said land and

delivered them to the defendant during the months of July and August, 1921. That there was sufficient proof that the reasonable value of the pineapples was as alleged in the complaint and that defendant has paid plaintiff on account of said delivery only $987.67 is not disputed.

Additional evidence, however, was offered by the plaintiff. Plaintiff further introduced as part of his case and as exhibits F, E and A, respectively, the letter of August 10, 1921, a copy of the letter of August 12, 1921, and the letter of September 7, 1921, quoted in the decision of the trial judge; and as exhibits C and B, respectively, his land patent grant No. 7483, dated April 6, 1920, to Lot No. 55, Kuiaha-Kaupakulua Homesteads above referred to, and a letter from John Venhuizen to A. F. Tavares, manager of the Haiku Fruit & Packing Company, the concluding paragraph of which is quoted as follows: "Owing to the fact that the former tenant, contractor or cropper as he may be termed, and his successors and more particularly Tamashiro, who as near as I can find was the last tenant contractor or cropper having left and totally abandoned the above mentioned place, some time on or before July 1st, this year, I have been compelled, owing to the circumstances, to take care of the ripening fruit, all of which has been delivered to your cannery, and on account of all the additional expense of picking, hauling, taking off of shoots, weeding, cultivating, and sundry expenses, the amount for fruit delivered is much needed to carry on the necessary work. I will therefore appreciate a settlement at your earliest convenience;" and plaintiff admitted that he and K. Matsuoka entered into the contract, a copy of which was later introduced in evidence as defendant's exhibit 2, which is the same contract dated December 2, 1918, hereinabove quoted at length from the decision of the

trial judge.   Plaintiff further admitted (transcript pp. 15, 39, 40) that on August 4, 1920, Matsuoka assigned said contract to Seije Gibo, who the same day mortgaged it to the Baldwin Bank, Limited, by an instrument which was not recorded until July 11, 1921; that on October 26, 1920, Seije Gibo assigned said contract to U. Tamashiro, who went into possession of the land about October 1920, and remained in possession of the same until sometime not later than June 1921, and that Venhuizen knew that Tamashiro was in possession of the land and claimed his right of possession by virtue of the assignments above referred to.   Plaintiff further admitted (transcript p. 71) that on or about July 15, 1921, U. Tamashiro assigned to S. Yoshimasu his right, title and interest to the agreement in evidence between Venhuizen and Matsuoka and that said pineapples were planted by persons in possession under said contract.   Upon cross-examination of defendant's witness S. Yoshimasu plaintiff introduced as his exhibit G an instrument executed and acknowledged by S. Gibo under date of August 6, 1921, purporting to assign to Konosuke Sakane all of the said Gibo's right, title and interest in and to the said Matsuoka agreement of December 2, 1918, together with all pineapples growing on the premises therein described, subject to all provisions, covenants and conditions therein contained and subject to the crop mortgage of August 4, 1920, for $2500 in favor of the Baldwin Bank, Limited, said instrument of assignment bearing the signature as witness thereto, of S. Yoshimasu, who upon the witness stand admitted knowledge of its contents.

It is upon admissions and evidence supplied by the plaintiff that the defense is in a large measure based. The theory of the defense is not made clear by defendant's answer, by its presentation of evidence in the trial court, by its assignment of errors or by its brief in this

court.  Defendant's answer, as above set forth, was a general denial.  There was no plea of payment and no affirmative defense by way of set-off or recoupment.  The defendant apparently contends that said contract is in its nature assignable, that the tenant's interest passed by mesne assignments to Yoshimasu, subject to the Baldwin mortgage, and that the July and August deliveries were of pineapples in which the last assignee had, subject to said mortgage, a seventy-five per cent ownership, for which he was entitled to receive pay and for which the defendant was legally liable to pay him.  In the view herein expressed it is unnecessary to decide whether the contract above set forth is assignable or non-assignable. In *Kisaba* v. *Borge,* 26 Haw. 279, this court declined to classify a similar contract as a "lease," a "planting contract," a "cropping contract" or "an agreement to plant on shares." In that case one of the successful appellants, who was one of the plaintiffs in the court below, it is true, was an assignee, but the direct question of assignability or non-assignability of the contract was not discussed nor passed upon by this court.  In the case at bar the defendant has introduced neither primary nor secondary evidence of the provisions of the assignment from Matsuoka to Gibo, of the assignment from Gibo to Tamashiro, of the assignment from Tamashiro to Yoshimasu, nor of the mortgage from Gibo to the Baldwin Bank, Limited.  It has shown neither actual nor constructive knowledge on the part of Tamashiro of the existence of the Baldwin Bank mortgage at the time of taking his assignment, nor any agreement on his part nor on the part of Yoshimasu to assume the same.

If the object of the testimony offered by defendant has been to disprove plaintiff's title by showing superior title in someone else that object has not been attained, for defendant's evidence, supplemented by that of plain-

tiff and by plaintiff's admissions above recited, is insufficient to show that title to seventy-five per cent of the crop referred to was in Matsuoka, in Gibo, in Tamsahiro, in Yoshimasu, in Sakane or was subject to a valid lien on the part of the Baldwin Bank, Limited.

Assuming but not deciding that under the issues framed title in plaintiff must be shown as a condition precedent to recovery, title in plaintiff is amply shown by interpretation of the contract, which supports the conclusion of the trial judge that the plaintiff was "entitled to the proceeds from all the pineapples delivered to the defendant." The trial judge, it is true, based this conclusion partly upon his interpretation that the contract was not assignable and partly upon a finding of abandonment of the crop by Matsuoka or Tamashiro. Even if the trial judge erred in the interpretation and in the finding above named—and as to that we express no opinion—the error was harmless for the reason that title in the landlord is amply sustained by the provisions of the contract itself. That it was the intention of the parties that title to the crop should be in the landlord is clearly shown by the provision that all pineapples should be sold and delivered to the Haiku Fruit & Packing Company, Limited, and the proceeds credited to the landlord. It is further shown by the provision that seventy-five per cent of the proceeds shall be paid to the tenant by the landlord, out of which seventy-five per cent the landlord is empowered to deduct expenses incurred by him in certain events named in the contract. It is quite clear that the parties did not intend to foreclose any of the landlord's rights in the proceeds of the crop at any time prior to his settlement with the tenant, nor to confer upon the tenant the right to dispose by way of mortgage or assignment of any part of the crop prior to the delivery of the same to the cannery.

The effect of the authorization in the contract by the landlord to the cannery to pay the tenant his share of the proceeds is discussed later in this opinion with reference to the interest, if any, which the cannery had therein and with reference to the question of the revocability or the irrevocability, as between the landlord and the cannery, of said authorization of payment.

Considering now the separate assignments of error:

1. The subject of assignability or non-assignability of the contract has already been discussed and no reversible error has been found in the decision of the circuit judge with reference thereto.

2. There is nothing in the record to show that the trial judge did not consider the mesne assignments referred to. On the contrary reference is made in the decision to said assignments. This assignment is discussed later in connection with assignments Nos. 7 and 8.

3. The trial court's finding re abandonment of crop by Matsuoka has already been discussed and no reversible error has been found.

4. Under the defendant's fourth assignment no error is found for the reason that the law of emblements invoked by the defendant is not applicable to a crop, the ownership of which is provided for by the contract.

5. The fifth assignment sets forth no error, the implied contract between plaintiff and defendant having been shown to have arisen by reason of the sale and delivery of the crops by the plaintiff to the defendant under circumstances which imply a promise to pay the reasonable value thereof.

6. Under the sixth assignment defendant contends that the court erred in holding that the defendant (plaintiff in error) had no interest in the contract, and argues that the advancement of funds by defendant, as set forth in Yoshimasu's testimony, for the purposes of cultivation

gave the defendant an interest in the contract and the pineapples grown under the terms thereof. It is not claimed that defendant is a party or privy to the contract. It is claimed, however, that the authorization in the contract to the defendant to pay to the tenant his share of the proceeds is irrevocable by one of the parties alone without the consent of the other and that because of such authorization, even after notice of revocation of the same by the landlord, the defendant is answerable to the landlord for only twenty-five per cent of the value of the crop. We have already found that up to the time of the sale of the crop to the defendant title to the same was in the plaintiff. The trial judge has found, upon evidence sufficient to sustain his finding, that in July and August, 1925, the plaintiff was in possession of said crop and that he sold and delivered the same to the defendant. The trial judge has also found, and we have sustained his finding, that the plaintiff was entitled to the proceeds of said crop. This being so the landlord was the only person who could legally direct the apportionment of the proceeds, and in any event he was the only one who could authorize a charge against his account on the books of the defendant company. In conformity with this view the authorization in the contract appears to be the authorization of the landlord and not that of the tenant. It occurs in the paragraph containing agreements on the part of the landlord "in consideration of the performance of the above agreements and covenants by the tenant." If such authorization was given by the landlord to the Haiku Fruit & Packing Company, Limited, with reference to the tenant named in exhibit 2 or any of his assignees it was given to said company as agent of the landlord, and as between the principal and agent it was revocable at the will of the principal—at least in the absence of any showing on the part

of the agent that he had made any expenditure or incurred any obligation on account of said authorization prior to notification of its revocation.  No claim is made and there is no evidence showing that transfer to the credit of Gibo's account was made on the books of the Haiku Fruit & Packing Company, Limited, of seventy-five per cent of the proceeds of the July and August deliveries prior to the receipt of plaintiff's notification contained in his letter of August 10, 1921, or that prior to receipt of said last-named letter any payment had been made to any person or corporation on account of the tenant's alleged share of said proceeds.  Likewise there is no evidence that prior to receipt of said letter the defendant had incurred any obligation to any person on account of said authorization.  The mortgage of the Baldwin Bank, Limited, for the reasons hereinabove set forth, constituted no lien upon said crop in the hands of the landlord or of his vendee and, whatever the facts may be, the proof was insufficient to show an obligation, induced by reliance upon said authorization, on the part of the defendant to pay the same.

After notification to the agent that the principal had incurred other expenses on account of said crop, which under the contract he was entitled to charge to the tenant's account, the agent was not only under no obligation but was without authority to pay the tenant his full seventy-five per cent of the proceeds; and after the revocation generally of the agent's authority to pay the tenant, the agent was under no obligation, so far as the proof discloses, which the tenant or any of his assignees or mortgagees could have enforced against it, either upon express agreement, or upon implied assumpsit for money had and received.  Furthermore, the amounts so paid by the agent could not have been pleaded by way of set-off or recoupment in the case at bar, nor could they

have been recovered by the Haiku Fruit & Packing Company, Limited, in an action in assumpsit against Venhuizen for money paid for his use and benefit—said amounts having been paid, not at his instance and request but contrary to his expressed directions.

7 and 8. The seventh and eighth assignments, and also the second assignment heretofore considered, to the effect that the trial court erred in considering certain evidence call to our attention no specific ruling of the trial court. Counsel in his brief (pp. 8, 9, 12, 13 and 14) has copied from the transcript certain questions and answers and has purported to state in effect other testimony, concerning which he has set forth no objections, motions to strike, rulings or exceptions. The mere allegation that the trial court did not consider the testimony thus quoted and referred to presents to this court nothing tangible for review. There is nothing brought to our attention in the record which is inconsistent with the fact of full consideration of said testimony by the trial court.

9. The amended complaint referred to in defendant's ninth assignment was filed under leave of court, to make the allegations conform to the proof. Except in formal matters the amended complaint was the same as the original but for the substitution of the words "pineapples of the reasonable value of" for the words "pineapples at the agreed price and value of," the amount remaining unchanged. Such an amendment was clearly allowable under section 2360, R. L. 1925, and no error was committed by the trial court with reference to the same.

The allegation in defendant's answer of former adjudication is not supported by proof, the judgment referred to not appearing to be in connection with the July and August deliveries of pineapples nor with the proceeds

thereof.  No assignment of error is based upon any ruling with reference to former adjudication.

The judgment of the circuit court is affirmed.

*W. L. Stanley* of the firm of *Smith, Warren, Stanley & Vitousek* (*M. T. Furtado* on the briefs) for plaintiff in error.

*S. C. Huber* and *I. M. Stainback* (*Huber & Kemp* and *A. E. Jenkins* on the brief) for defendant in error.